[Cite as *In re L.F.*, 2020-Ohio-883.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF:<br><br>L.F. | JUDGES:<br>Hon. William B. Hoffman, P.J<br>Hon. W. Scott Gwin, J.<br>Hon. Craig R. Baldwin, J.<br><br>Case Nos. 2019CA0064, 2019CA0065, &<br>2019CA0066<br><br>O P I N IO N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Licking County Court of Common Pleas, Juvenile Division, Case Nos. F2017-0405, F2017-0406, F2017-0407 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | March 5, 2020 |

APPEARANCES:

| | |
|---|---|
| For Mother<br>FITTRO LAW, LLC<br>1335 Dublin Road, Suite 115F<br>Columbus, Ohio 43215 | For Father<br>MICHAEL DALSANTO<br>33 West Main Street, Suite 109<br>Newark, Ohio 43055 |
| Assistant Prosecuting Attorney<br>MANDY DELEEUW<br>42 S. Second Street, Fourth Floor<br>Newark, Ohio 43055 | Guardian Ad Litem<br>ROBIN L. GREEN<br>P.O. Box 157<br>Newark, Ohio 43055 |

*Hoffman, P.J.*

**{¶1}** In Licking App. Nos. 19-CA-64, 19-CA-65, and 19-CA-66, Appellant Leah McDaniel-Pierce ("Mother") appeals three July 3, 3019 Judgment Entries entered by the Licking County Court of Common Pleas, Juvenile Division, which overruled her objections to the magistrate's April 19, 2019 decision, approved and adopted said decision as order of the court, terminated her parental rights, privileges and responsibilities with respect to her three minor children, and granted permanent custody of the children to appellee Licking County Job and Family Services ("LCJFS").

STATEMENT OF THE FACTS AND CASE

**{¶2}** Mother and Lorenzo Feaster ("Father") (collectively, "Parents") are the biological parents of Child 1, Child 2, and Child 3 (collectively, "the Children").[1] On June 7, 2017, the trial court issued an ex parte order of removal of the Children due to allegations of parental substance abuse, concerns regarding Mother and Father's mental health, and domestic violence in the home. The trial court granted emergency shelter care custody of the Children to LCJFS on June 8, 2017.

**{¶3}** LCJFS filed Complaints relative to the Children on June 8, 2017. The Complaints were filed after law enforcement responded to Parents' home on June 7, 2017, upon receiving a report Mother was hanging out of a window, calling for help. When officers arrived, they found Parents acting confused and reported an altercation. Parents have a history of domestic violence. Officers were informed Father had turned on the gas stove and was threatening to ignite the flame with a lighter. Officers transported Mother and the Children to New Beginnings, where Mother continued to display erratic behavior.

---

[1] Father is not a party to this appeal.

Mother had a prior involvement with LCJFS in 2014, which resulted in the Children being adjudicated dependent and removed from her care. The Children were subsequently returned to Mother.

{¶4} The Complaints also alleged Parents use illegal substances. Parents were drug tested on June 7, 2017. Mother tested positive for amphetamines, methamphetamines, and THC. Mother admitted she and Father had smoked meth earlier that day. Father tested positive of Oxycodone, THC, and methamphetamines. Mother's criminal history included a number of charges for domestic violence. Father had a significant criminal history including burglary, robbery, violation of a protection order, and possession of drugs. Parents also have a history of mental health concerns.

{¶5} The magistrate ordered Parents to undergo evaluations and attend counseling at the Licking County Alcoholism Prevention Program or other approved drug and/or alcohol treatment program, and submit to random drug screening and breathalyzer testing. LCJFS filed Mother's case plan on July 6, 2017. The case plan required Mother to complete a substance abuse assessment and follow all recommendations, complete a mental health evaluation and follow all recommendations, obtain and maintain stable employment and housing, and address domestic violence issues. The trial court conducted an uncontested adjudicatory and dispositional hearing on July 26, 2017, and found the Children to be dependent.

{¶6} LCJFS filed motions for permanent custody of the Children on May 9, 2018. On September 14, 2018, Mother filed a motion for temporary custody to maternal grandmother, Lorrie Lessig ("Maternal Grandmother"), or, in the alternative, a motion for

extension of temporary custody. The guardian ad litem filed her report and recommendation on September 19, 2018.

{¶7} The case proceeded to hearing before the magistrate on December 19, 2018, and January 14, 2019. The following evidence was presented at the hearing.

{¶8} Mother attended two sessions at Behavioral Healthcare Partners ("BHP") for assessment in June and July, 2017. A treatment plan was not created as Mother failed to attend the additional sessions necessary to create the plan. Based upon the information obtained during the two sessions, Stacy Thaxton, the BHP therapist conducting the intake, was able to determine additional services were warranted for outpatient individual counseling as well as substance abuse treatment. BHP closed Mother's case in February, 2018. Mother engaged in mental health services through The Main Place from September, 2018, until November, 2018, when she became incarcerated.

{¶9} Mother testified she never engaged in substance abuse treatment. She admitted she continued to use drugs, most recently a week before the January 14, 2019 hearing date. Mother never addressed the domestic violence concerns. Mother continued to have contact with Father despite a civil protection order issued against him.

{¶10} Mother was technically homeless throughout the course of the proceedings. She had not had stable housing since August, 2017. Mother was staying with her brother at the time of the second hearing. In November, 2018, Mother resorted to spending the night in a storage unit with Father. Mother had not been employed since 2017. That employment had lasted only one week.

{¶11} The Children all have special needs.  Child 1 has adjustment disorder with disturbance of conduct.  Child 1 is not prescribed medication.  Although LCJFS is trying to engage Child 1 in counseling, Child 1 refuses to cooperate.  Child 2 has ADHD as well as conduct disorder, disruptive mood disorder, and intermittent explosive disorder.  Child 2 is prescribed medication and attends counseling.  Child 3 has ADHD, disruptive mood disorder, and dysregulation disorder.  Child 3 is prescribed medication, but does not attend counseling.  The Children are very defiant.  They have been in several different foster homes.

{¶12} The Children were removed from their initial foster placement in October, 2018, due to concerns the foster parents were using food as punishment as well as other concerns about disproportionate punishments.  The second placement only lasted one month.  The first foster parents advised LCJFS Child 2 and Child 3 would destroy property, and Child 1 would steal. There had been instances of sexual acting out between Child 1 and Child 2, as well as sexual acting out by Child 2 toward other children.  Child 1 disclosed to a foster sibling Child 1 and Child 2 had sexual intercourse while living with Mother.  Child 1 had told Mother Child 2 had forced himself on her, but Mother shrugged it off as experimenting. Father acknowledged to Palma Ashcraft, the ongoing caseworker assigned to the family, he was aware of the sexual behavior of Child 1 and Child 2.

{¶13} The second foster family noted Child 2 was abusive toward Child 1 and Child 3.  Child 2 was also physically abusive to another child.  Child 1 shut down at the second placement.  Child 1 refused to engage in anything, including going to church, which prevented the foster parents from taking the other children to church.  Child 1 also

refused to eat.  The second placement could not handle the Children's behaviors and requested they be removed.

**{¶14}** The Children initially did well in their third placement. However, after school on the third day, Child 2 slammed Child 3's head into a wall.  Child 1 and Child 2 began to argue, which escalated and resulted in Child 1 and Child 2 punching holes into the wall and breaking a door off its hinges.  As of the date of the second hearing, Child 1 was doing well.  Child 1 was concerned she, Child 2, and Child 3 would be removed from the placement due to Child 2 and Child 3's physical aggression toward the foster parents' biological children.  The foster family had given their 30 days' notice with respect to Child 2.

**{¶15}** With respect to Maternal Grandmother, the evidence revealed there were past issues of domestic violence between her and Bruce Lessig, her husband.  During one incident, Mother's older brother was struck in the face.  Franklin County Children's Services investigated Maternal Grandmother as an alleged perpetrator in October, and December, 1991, and substantiated she was the perpetrator of emotional maltreatment and physical abuse against Mother and her brother.  Prior to his marriage to Maternal Grandmother, Lessig had been on probation for two years as the result of a domestic violence conviction. LCJFS Caseworker Ashcraft expressed concerns regarding Lessig's ability to handle the Children due to his history of domestic violence.  In addition, Maternal Grandmother and Lessig did not have a complete understanding of the Children's needs and LCJFS did not believe Maternal Grandmother and Lessig were prepared for the level of commitment they would have to make.

**{¶16}** Via Decision filed April 19, 2019, the magistrate recommended Mother and Father's parental rights, privileges, and responsibilities with respect to Child 1, Child 2, and Child 3 be terminated.  The magistrate also recommended permanent custody of Child 1, Child 2, and Child 3 be granted to LCJFS. The magistrate further recommended Mother's motion requesting legal custody be granted to Maternal Grandmother be denied. The magistrate found LCJFS made reasonable efforts to prevent the need for removal, but ongoing concerns made the continued removal necessary and was in the Children's best interests. The magistrate further found Child 1, Child 2, and Child 3 cannot and should not be placed with Mother or Father within a reasonable time.

**{¶17}** Mother filed objections to the magistrate's decision. Via Judgment Entry filed August 2, 2018, the trial court overruled Mother's objections, terminated Mother's parental rights, privileges, and responsibilities with respect to Child, and granted permanent custody of Child to LCJFS.

**{¶18}** It is from this judgment entry Mother appeals, raising the following assignments of error:

> I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT IT WOULD BE IN THE BEST INTERESTS OF L.F., L.F., AND L.F. TO PERMANENTLY TERMINATE THE PARENTAL RIGHTS OF THEIR PARENTS AND PLACE THEM IN THE PERMANENT CUSTODY OF LICKING COUNTY JOB AND FAMILY SERVICES, CHILDREN SERVICES DEPARTMENT.

II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FOUND BY CLEAR AND CONVINCING EVIDENCE THAT L.F., L.F., AND L.F. COULD NOT BE PLACED WITH THEIR MOTHER WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH THEIR MOTHER.

**{¶19}** This case come to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

I, II

**{¶20}** In her first assignment of error, Mother contends the trial court erred in finding it was in the Children's best interest to terminate her parental rights and grant permanent custody to LCJFS.  In her second assignment of error, Mother challenges the trial court's finding the Children could not be placed with her within a reasonable time or should not be placed with her.  We elect to address both assignments of error together.

**{¶21}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* Stark App. No. CA5758 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶22}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court

schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶23} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶24} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

**{¶25}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶26}** If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

**{¶27}** As set forth in our statement of the facts and case, supra, Mother failed to complete her case plan services. In fact, Mother made little to no progress on her case plan. Mother failed to complete her initial intake at Behavioral Healthcare Partners, attending only two sessions. As a result, the therapist was unable to create a treatment plan. Mother failed to undergo drug and alcohol treatment, and admitted to the caseworker she had used methamphetamine a week prior to the second hearing. Mother failed to obtain and maintain stable housing and employment. Mother failed to address domestic violence concerns. She continued to have contact with Father despite an active CPO against him. Mother had a felony forgery charge which was pending at the time of the second hearing.

{¶28} The Children all have special needs. Child 1 has adjustment disorder with disturbance of conduct. Child 1 is not prescribed medication. Although LCJFS is trying to engage Child 1 in counseling, Child 1 refuses to cooperate. Child 2 has ADHD as well as conduct disorder, disruptive mood disorder, and intermittent explosive disorder. Child 2 is prescribed medication and attends counseling. Child 3 has ADHD, disruptive mood disorder, and dysregulation disorder. Child 3 is prescribed medication, but does not attend counseling. The Children are very defiant. They have been in several different foster homes. The current foster parents are willing to keep Child 1 and Child 3. They are unable to handle Child 2. Mother acknowledged she was not in the position to care for the Children. Maternal Grandmother's home proved not to be a viable option.

{¶29} Based upon the foregoing, we find the trial court's finding it was in the best interest of the children to grant permanent custody to LCJFS is not against the manifest weight of the evidence. We further find the trial court's finding Child 1, Child 2, and Child 3 could not be placed with Mother within a reasonable period of time or should not be placed with her is not against the manifest weight of the evidence.

{¶30} Mother's first and second assignments of error are overruled.

**{¶31}** The judgment of the Licking County Court of Common Pleas, Juvenile

Court, is affirmed.


By: Hoffman, P.J.

Gwin, J.  and

Baldwin, J. concur